UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-61977-CIV-BLOOM/VALLE

**ANTHONY RUSSELL**, and
**PAMELA RUSSELL**,

      Plaintiffs,
v.

**NATIONSTAR MORTGAGE, LLC**,

      Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. [35], pursuant to Fed. R. Civ. P. 12(b)(6). The Court is fully advised after careful review of the Motion, the parties' briefs, the record, and the applicable law.

    **I.**    **Background**

Plaintiffs filed an Amended Complaint, seeking relief under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.*, ("RESPA") and a claim for breach of contract under Florida law. Plaintiffs allege that Defendant is liable under §2605 of RESPA for failing to adequately respond to Plaintiffs' Qualified Written Requests ("QWR"). *See* ECF No. [30] at 1. Plaintiffs seek statutory damages under RESPA for Defendant's "pattern or practice" of not complying with RESPA. ECF No. [30] at 14. Plaintiffs further allege that Defendant is in breach of a loan modification offer by failing to "permanently modify Plaintiffs' loan in accordance with the agreed terms." *Id*. at 15.

Defendant sent a letter to Plaintiffs dated May 29, 2012, informing them that Defendant was the new servicer for Plaintiffs' mortgage account. *See id.* at 3-4. Plaintiffs allege that they sent a letter, dated April 8, 2013, seeking "a copy of our promissory note, the mortgage, a copy

of the loan agreement, truth in lending statements, and a life of loan accounting for all payments including loan payments and escrow disbursements for this property." ECF No. [30-1] at 1. Plaintiffs explained the request was pursuant to their belief that the "loan term and conditions should have been adjudged prior to the transfer from Bank of America in May 2012, and a proper accounting of escrow payments and an amortization schedule provided." *Id*.

Defendant, by and through one of its Customer Relations Specialists, sent a response dated April 26, 2013, which indicated that copies of the documents Plaintiffs requested were enclosed, and if information was not provided, explained why. *See* ECF No. [30-2] at 1-4. Defendant stated that the copies of the payment history reflected "a complete payment history for the period of 05/15/2012, through the date of this letter," and also indicated that copies of "Prior Servicer Payment History" were included. *Id*. at 1-2. Plaintiffs allege, however, that no attachment of the prior servicer payment history was actually provided. *See* ECF No. [30] at 6.

On May 3, 2013, prior to receiving Defendant's response, Plaintiffs sent a letter highlighting a discrepancy in the account balance and asserting the need for the complete loan history. *See id.* Plaintiffs allege that they then sent another letter in response to Defendant's response by regular and certified mail, dated May 17, 2013, indicating that Defendant had not fully complied with Plaintiffs' request, including the failure to submit "a life of loan accounting for all payments including loan payments and escrow disbursements for our property, and the mortgage and loan ownership." ECF No. [30-3] at 1.

Defendant, by and through another Customer Relations Specialist, sent a response dated June 10, 2013, stating that the documents Plaintiffs requested were enclosed, including a "complete payment history for the period of May 17, 2012, through the date of this letter." ECF No. [30-4] at 1. On June 11, 2013, prior to receiving Defendant's response, Plaintiffs sent

another letter reiterating the need for the complete loan history. *See* ECF No. [30] at 7. Plaintiffs allege that they then sent another letter to Defendant dated August 12, 2013. *See id.* Again, Defendant, by and through another Customer Relations Specialist, sent a response dated August 22, 2013, stating that the "Payment History reflects a complete payment history for the period of May 17, 2012, through the date of this letter," and named a Single Point of Contact ("SPOC"). ECF No. [30-6] at 1.

Plaintiffs wrote directly to Defendant's CEO on September 2, 2013, explaining the letter was related to Defendant's failure to comply with RESPA. *See* ECF No. [30] at 8. After an unsuccessful attempt at contacting the SPOC on September 10, 2013, Plaintiffs allege that they sent another letter to inform Defendant of their intent to contact the Consumer Financial Protection Bureau ("CFPB"). *See id.* Once again, Defendant, by and through yet another Customer Relations Specialist, sent a response to the CEO's letter dated September 19, 2013, naming another Single Point of Contact. *See id.* at 9. After an unsuccessful attempt at contacting the other SPOC, Plaintiffs filed a formal complaint with the CFPB on September 27, 2013. *See id.* Plaintiffs allege that they have not ever received a complete loan history from Defendant. *See id.* at 2.

On February 11, 2014, Defendant sent a letter to Plaintiffs with an offer to enter into a Trial Period Plan ("TPP") to permanently modify their loan. *See id.* at 9. The offer indicated:

> To accept this option, within 14 days of the date of this letter you must call us at 866-316-2432 to confirm your participation or make your first trial period payment. If you follow the terms of the enclosed Trial Period Plan, your loan will be permanently modified.

ECF No. [30-10] at 1.

The offer also stated that if Plaintiffs return a complete Borrower Response Package ("BRP") by March 1, 2014, Defendant "may be able to offer you a HAMP modification with a

lower monthly principal and interest payment than what we estimate you would receive for the proposed modification described above." *Id*. at 3. However, Plaintiffs allege that they never received the BRP. *See* ECF No. [30] at 10. Defendant's response to Plaintiffs' letter about the missing BRP stated, "no additional information is needed such as the [BRP] as referred in your correspondence." ECF No. [30-12] at 1. Plaintiffs made the first trial period payment by March 1, 2014, and then made a subsequent payment by April 1, 2014. *See* ECF No. [30] at 11.

On April 16, 2014, Defendant sent a letter to Plaintiffs informing them of their eligibility for a Freddie Mac Standard Modification. *See id.* at 11-12. However, the offer provided a higher interest rate and monthly payment. *See id.* at 12. Plaintiffs sent a letter dated April 18, 2014, highlighting the discrepancy between the Trial Period Plan and the Modification Agreement. *See id.* Plaintiffs made the final trial period payment by May 1, 2014 and continued to make the trial period payments for the months of June 2014, July 2014, and August 2014. *See id.* at 12-13. Defendant accepted the payment for June 2014, and rejected and returned Plaintiffs' payments for July 2014 and August 2014. Defendant did not extend Plaintiffs a permanent modification of their loan.

**II.     Legal Standard**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2)'s pleading standards "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiffs' allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiffs. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss…the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

### III.   Discussion

Defendant raises two grounds for dismissal: (1) Plaintiffs are not entitled to statutory damages under RESPA because they fail to sufficiently allege that Defendant engaged in a pattern or practice of noncompliance; and (2) Plaintiffs' breach of contract claim fails as a matter of law. *See* ECF No. [35] at 1.

#### A.   Whether Plaintiffs state a claim for statutory damages under RESPA

RESPA requires loan services of a federally regulated mortgage loan to respond to a QWR submitted by a borrower. *See* 12 U.S.C. § 2605(e). In order to recover statutory damages under RESPA for failure to respond to a QWR, Plaintiffs must show that Defendant engaged in "a pattern or practice of noncompliance" with respect to Plaintiffs. *Id.* at § 2605(f)(1)(B). Here,

5

Case 0:14-cv-61977-BB   Document 57   Entered on FLSD Docket 06/15/2015   Page 6 of 12

CASE NO. 14-61977-CIV-BLOOM/VALLE

before the Court can determine whether Plaintiffs have states a claim of "pattern or practice of noncompliance," the Court must determine how many QWRs Plaintiffs have sufficiently alleged, as the parties disagree over the number of QWRs Plaintiffs sent Defendant.

### 1. Plaintiffs have sufficiently alleged Defendant's inadequate responses to five QWRs.

Defendant concedes that Plaintiffs sent two QWRs dated April 8, 2013 and May 17, 2013, but contends that Plaintiffs have not alleged sufficient facts to demonstrate that the August 12, 2013 and September 14, 2013 letters are QWRs. *See* ECF No. [35] at 3. RESPA, in pertinent part, provides:

> For purposes of this subsection, a [QWR] shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that – (i) includes, or otherwise enables, the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

"Under subsection (ii), a QWR must (1) give a statement for the reasons that the account is in error or (2) seek other information regarding the servicing of the loan." *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, 1306 (M.D. Fla. 2012). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* (quoting 12 U.S.C. § 2605(i)(3); *see also Madura v. BAC Home Loans Servicing, LP*, 593 F. App'x. 834, 842 (11th Cir. 2014) (same).

Plaintiffs have sufficiently alleged five QWRS. As explained below, the Court finds the following letters to be QWRs: (1) April 8, 2013, (2) May 3, 2013, (3) May 17, 2013, (4) August

12, 2013, and (5) September 14, 2013. By virtue of Defendant's concession, the Court finds that Plaintiffs have sufficiently pled that the April 8, 2013 and May 17, 2013 letters are QWRs.

As for the May 3, 2013 letter, though Plaintiffs' Amended Complaint described the letter as a "correspondence," as alleged, the letter also stated: "[Plaintiffs'] principal balance is less than $202,745.22 shown in your April-9th statement." ECF No. [30] at 6. In addition, Plaintiffs referred to the May 3rd letter in the August 12, 2013 letter, stating that the May 3, 2013 letter furthered its QWR dated April 8, 2013. *See* ECF No. [45-1] at 1.[1] Because the May 3rd letter, as alleged, asserted the belief that the account is in error and sought information regarding the servicing of the loan, the Court finds that the May 3, 2013 letter is adequately pled as a QWR.

Turning to the August 12, 2013 letter, the letter primarily pertained to a general written request to, among other options, lower the interesting rate and reduce the loan's term, and to obtain the contact information of a Nationstar good faith negotiator. The letter also referenced two previous requests—insisting to receive a complete loan history. The Court finds that the August 12, 2013 letter is sufficiently pled as a QWR. *See Ogden v. PNC Bank*, No. 13-cv-01620-MSK-MJW, 2014 WL 4065617, at *7 (D. Colo. 2014) (holding that although information regarding a complete loan history report was not the primary purpose of the letter, such a mention is sufficient to constitute a QWR under RESPA).

Defendant argues that its response to the August 12, 2013 QWR reflects that "Prior Servicer Payment History" was enclosed and, thus, no violation occurred. *See* ECF No. [30-6] at 2. The fifth paragraph of the Amended Complaint alleges, however, that Plaintiffs still have not received it. *See* ECF No. [30] at 2. Taking Plaintiffs' allegations as true, the Court concludes

---

[1] A district court may consider a document attached to an answer, when deciding a motion to dismiss, without converting the motion into one for summary judgment only if the attached document is: (1) central to one of the claims, and (2) undisputed, meaning that the authenticity of the document is not challenged. *See Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002). Here, the Court finds that the May 3, 2013 letter is central to Plaintiff's claim, and the existence and contents of the letter are undisputed.

that Plaintiffs' letter sent on August 12, 2013 is a QWR.

As for the September 14, 2013 letter, Defendant does not contest whether the letter is a QWR but, instead, contests whether the letter was responded to. *See* ECF No. [35] at 3. Plaintiffs' allegations in the Amended Complaint provided sufficient detail of the reasons for their belief that the account was in error. *See* ECF No. [30] at 8. Although Plaintiffs failed to specifically allege whether Defendant failed to respond to their letter dated September 14, 2013, the fifth paragraph of the Amended Complaint asserts that Plaintiffs still had not received the information requested. *See* ECF No. [30] at 2. Thus, Defendant is liable for inadequate responses to Plaintiffs five QWRs dated: (1) April 8, 2013, (2) May 3, 2013, (3) May 17, 2013, (4) August 12, 2013, and (5) September 14, 2013. The Court now turns to the issue of whether five instances of noncompliance with RESPA are sufficient to establish statutory damages.

### 2. Plaintiffs' have sufficiently stated a claim for statutory damages under RESPA.

RESPA permits the award of statutory damages in the case of a "pattern or practice of noncompliance" in an amount not to exceed $2,000. *See* 12 U.S.C. § 2605(f)(1)(B). Courts have interpreted the term "pattern or practice" in accordance with the usual meaning of the words, suggesting "a standard or routine way of operating." *McLean v. GMAC Mortgage, Corp.*, 595 F.Supp.2d 1360, 1365 (S.D. Fla. 2009) (quoting *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002)) (holding that two violations of RESPA are insufficient).

Here, Plaintiffs sent five QWRs and several other correspondences, including phone calls and a letter to Defendant's CEO, over the course of six months to obtain the complete loan history from Defendant. *See* ECF No. [30]. Plaintiffs also filed a formal complaint to the CFPB. *See* ECF No. [30] at 9. The Court finds these are sufficient allegations of a "pattern or practice" to state a claim for statutory damages under RESPA. *See Ploog v. HomeSide Lending, Inc.*, 209

F. Supp. 2d 863, 868 (N.D. Ill. 2002) (complaint alleging failure to respond to five QWRs sufficient to state claim for statutory damages under RESPA). *See also Thepvongsa v. Reg'l Tr. Servs. Corp.*, 972 F. Supp. 2d 1221, 1228 (W.D. Wash. 2013) (noting RESPA was enacted in large part because "servicers were not responding to legitimate inquiries from their borrowers"). Defendant's motion on this basis is denied.

### B. Whether Plaintiffs state a breach of contract claim based on the TPP

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citations omitted). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.* (citations omitted).

Under Florida law:

In order to create a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing in the same sense.

In the making of a valid contract, the parties must not only be capable of an intelligent assent, but they must actually give their assent; and the assent must be precisely the same thing, and at the same instant of time. Consequently, if one assents to a certain thing and the other assents to it only with modifications, or if one assents to it at one time and the other at a different time, no agreement or contract arises therefrom. From this it is clear that an offer must be accepted before it can become a binding promise. While the assent of both parties must be at the same instant of time, it is not necessary that the communication shall be simultaneous.

The acceptance of an offer, to result in a contract, must be: (1) Absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly required by the offer. If a person offers to do a definite thing, and the person to whom the offer is made accepts conditionally, or introduces a new term into the acceptance, his answer is not an acceptance; but it is either a mere expression of willingness to that, or it is in effect a counter offer, which must be accepted or assented to before a contract

> can result. It is also essential that acceptance shall be made in the manner, at the place, and within the time expressly or impliedly designated in the offer. The proposer has the right to dictate the terms in respect to the time, place, and manner of acceptance, and when he does so, like other terms, they must be complied with.

*Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92, 93-94 (1910) (citations omitted).

Plaintiffs claim that Plaintiffs accepted Defendant's TPP offer dated February 11, 2014 to permanently modify their loan when Plaintiffs made their first trial period payment prior to the March 1, 2014 deadline. *See* ECF No. [30] at 15. Plaintiffs claim that this contract was breached when Defendant failed to permanently modify their loan following Plaintiffs' three trial period payments, as per the agreement. *See id.* Defendant argues that such a contract was explicitly precluded by the terms of the TPP agreement.

Defendant's TPP-related correspondence stated:

> Once you have successfully made each of the payments above by their due dates, you have submitted the required copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

ECF No. [30-10] at 3. Further, it provided:

> Once you make all of your trial period payments on time and return to us the required copies of a modification agreement with your signature, we will sign one copy and send it back to you so that you will have a fully executed modification agreement detailing the terms of the modified loan.

ECF No. [30-10] at 4. As the parties do not dispute whether this correspondence constituted an offer, the Court turns to the issue of whether Plaintiffs' acceptance was sufficient under Florida law. As explained below, it was not.

The terms of accepting Defendant's offer were clear: (1) Plaintiffs had to successfully make each of the three trial period payments; (2) Plaintiffs had to sign and submit the modification agreement, and (3) Defendant had to sign the modification agreement. *See* ECF

No. [35] at 4. This did not occur. Though Plaintiffs submitted the three trial period payments, Plaintiffs do not allege that they ever signed a modification agreement.

In response, Plaintiffs argue that Defendant failed to provide the correct mortgage agreement, which made it "impossible" for them to sign and return to Defendant. *See* ECF No. [45] at 8. Plaintiffs allege that the modification agreement that Defendant provided did not reflect the terms of the offer because the TPP offered monthly payments of $1,983.75 and a fixed interest rate of 4.625% for forty years while the modification agreement offered and monthly payments of $2,031.88 and an interest rate of 6.625%. *See* ECF No. [30] at 12.

Plaintiffs' argument falls short. It is clear that by failing to sign the modification agreement, Plaintiffs did not comply with the plain language of the terms of Defendant's offer. Plaintiffs' reliance on the following statement from Defendant is of no consequence, either: "No additional information is needed such as the [BRP] as referred in your correspondence." ECF No. [45] at 8 (quoting ECF No. [30-12]). Plaintiffs argue that this language created a "reasonable belief that they had to simply continue making the trial payments, a modification agreement would subsequently be provided, and their loan would then be permanently modified." *Id.* Even assuming *arguendo* this belief could have been reasonable, the fact that Defendant never provided a modification agreement with terms to Plaintiffs' satisfaction, *see* ECF No. [45] at 8 ("a correct modification agreement was not provided"), means, simply, that a contract was never formed in the first place.[2] *See Smith v. Locklear*, 906 So. 2d 1273 (Fla. 5th DCA 2005) ("So long as any essential matters are left open for further consideration, the contract is not complete.") (citing *Strong*, 54 So. at 92). Because Plaintiff fails to plead the existence of a

---

[2] Plaintiffs do not assert that Defendant waived the requirement of a written modification agreement, and even if they had, the Court is not compelled to so find. *See, e.g.*, *Bush v. Ayer*, 728 So. 2d 799 (Fla. 4th DCA 1999) (finding waiver of requirement of signed contract where letter "expressly recognized" existence of contractual agreement through conduct).

contract under Florida law, the Court need not address Defendant's statute of frauds argument in dismissing Plaintiffs' breach of contract claim.

### IV. Conclusion

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, **ECF No. [30]**, is **DENIED IN PART AND GRANTED IN PART**;

2. Count II of Plaintiffs' Amended Complaint, **ECF No. [30]**, is **DISMISSED**.

3. The parties shall continue to abide by the Court's Scheduling Order, ECF No. [17], as modified by the Court's Order, ECF No. [46].

**DONE AND ORDERED** in Ft. Lauderdale, Florida, this 15th day of June, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record