UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61977-CIV-BLOOM/VALLE

**ANTHONY RUSSELL**, *et al.*,

    Plaintiffs,
v.

**NATIONSTAR MORTGAGE, LLC**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion for Partial Summary Judgment Limiting Actual Damages, ECF No. [66] ("Def. Motion"), and Plaintiffs' Motion for Partial Summary Judgment as to Statutory Damages, ECF No. [67] ("Pl. Motion"). The Court has reviewed the Motions, all supporting and opposing filings and submissions, and the record in the case. For the following reasons, Plaintiffs' Motion is **DENIED**, and Defendant's Motion is **GRANTED**.

    **I.**    **Background**

On February 17, 2015, Plaintiffs filed an Amended Complaint, ECF No. [30] ("Compl."), seeking actual and statutory relief for Defendant's alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2601, *et seq.* ("RESPA").

On October 1, 2003, Plaintiffs executed a note and mortgage in favor of GreenPoint Mortgage Funding, Inc., for $236,000.00. *See* ECF No. [78] ¶ 1 (Defendant's Statement of Facts, "Def. SOF"), ECF No. [79] ¶ 1 (Plaintiffs' Statement of Facts, "Pl. SOF"). On May 29, 2012, Nationstar sent Plaintiffs a letter informing them that Nationstar had become the servicer

for their mortgage loan, effective May 15, 2012. *See* Pl. SOF ¶ 2. In early 2013, Plaintiffs "believed there may have been an error in the crediting of their payments by the prior servicers." *Id.* at 3.

Presumably to address this belief, on April 8, 2013, Plaintiffs sent a Qualified Written Request ("QWR") to Nationstar requesting "a life of loan accounting for all payments including loan payments and escrow disbursements." ECF No. [66-2] at 6 ("QWR 1"). Plaintiffs stated in QWR 1 that their monthly payments were current at that time. *Id.* Defendant, by and through one of its Customer Relations Specialists, sent a response dated April 26, 2013, which indicated that copies of the documents Plaintiffs requested were enclosed, and if information was not provided, explained why. *See* ECF. No. [30-2] at 1-4 ("Def. Resp. 1"). Defendant stated that the copies of the payment history reflected "a complete payment history for the period of 05/15/2012, through the date of this letter," and also indicated that copies of "Prior Servicer Payment History" were included. *Id.* ("You have asked for information or documents regarding the origination of your mortgage loan, the transfer of ownership of your loan and the transfer of servicing rights to your loan. These requests are not related to the servicing of the loan and do not identify any specific error regarding the servicing of the loan. Accordingly, your request does not fall within the scope of information that must be provided.").

On May 3, 2013, prior to receiving Defendant's response, Plaintiffs sent another QWR to Nationstar requesting a "life of loan accounting for all payments and escrow disbursements for our property." See ECF No. [66-2] at 7 ("QWR 2"). Plaintiffs stated that if they did not receive this accounting in the following 30 days, they would begin "depositing our monthly payments into an escrow account at BB&T bank. . . . [T]his will be the last [] payment until we get a complete and satisfactory response from you." *Id.* After receiving Defendant's response,

Plaintiffs sent another letter, dated May 17, 2013, indicating that Defendant had not fully complied with Plaintiffs' request, including the failure to submit "a life of loan accounting for all payments including loan payments and escrow disbursements for our property, and the mortgage and loan ownership." ECF No. [30-3] at 1 ("QWR 3").

Defendant sent a response, dated June 10, 2013, stating that the documents Plaintiffs requested were enclosed, including a "complete payment history for the period of May 17, 2012, through the date of this letter." ECF No. [30-4] at 1 ("Def. Resp. 2"). Nationstar did not provide GreenPoint Mortgage Funding, Inc.'s line-by-line payment history from 2003 to 2007; rather, it included two payment histories (from Nationstar and Bank of America, N.A.) capturing the information in GreenPoint's systems. *Id.* The pay histories provided to Plaintiffs reflected Plaintiffs' account as being current and paid-in-full through the GreenPoint transfer. *See* Def. SOF ¶ 11.

Plaintiffs sent another letter to Defendant dated August 12, 2013. *See* ECF No. [66-2] at 9 ("QWR 4"). Again, Defendant sent a response dated August 22, 2013, stating that the "Payment History reflects a complete payment history for the period of May 17, 2012, through the date of this letter," and named a Single Point of Contact ("SPOC"). ECF No. [30-6] at 1-3 ("Def. Resp. 3.").

On September 14, 2013, Plaintiffs sent another QWR to Nationstar requesting a complete loan history. *See* Pl. SOF ¶ 20 ("QWR 5"). Once again, Defendant sent a response dated September 19, 2013, naming another SPOC. *See* ECF No. [30-9] at 3 ("Def. Resp. 4"). Although Plaintiffs technically sent five QWRs and Defendants sent four responses, the parties do not dispute that Defendant responded to each of Plaintiffs' QWRs. *See* Pl. SOF ¶ 44.

3

In November 2013, Plaintiffs stopped making payments to Nationstar. *Id.* ¶ 13. On September 4, 2014, Nationstar initiated foreclosure proceedings based on Plaintiffs' nonpayment, for which Plaintiffs retained an attorney. *See* Def. SOF ¶ 14; ECF No. [66-3] at 6 (Plaintiffs' Answers to Nationstar's First Set of Interrogatories, "Pl. Interrog.").

## II.     Legal Standard

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (*quoting Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th

Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

**III.     Discussion**

Plaintiffs argue that Nationstar's repeated failure to provide a line-by-line payment history for the life of their mortgage loan amounts to a pattern or practice of noncompliance under RESPA, entitling them to statutory damages. *See* 12 U.S.C. § 2605(f)(1)(B) (quoted below). In response, Defendant contends that it met its statutory obligations in providing timely responses addressing Plaintiffs' concerns; thus, its conduct did not violate RESPA, let alone establish a pattern of noncompliance. Defendant also argues, and Plaintiffs dispute, that any actual damages, other than postage costs, were caused by Plaintiffs' own actions in ceasing payments, rather than Defendant's actions in violating their statutory duties.

Section 2605(e) states that a loan servicer has a "duty . . . to respond to borrower inquiries," which includes:

> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and

5

> telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e). The statute allows an aggrieved plaintiff to recover two types of damages from a loan servicer for its violation of the Act – (A) any actual damages to the borrower as a result of the failure; and (B) any additional [statutory] damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."[1] 12 U.S.C. § 2605(f)(1). Plaintiffs have the burden of proving damages. *McLean v. GMAC Mortgage Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009).

### A. Plaintiffs Fail to Establish Requisite "Pattern or Practice"

Plaintiffs contend that "Nationstar continuously and methodically failed to and refused to provide a complete history, but instead, provided generic responses to Plaintiffs' five QWRs." Pl. Motion at 5. Courts have interpreted the term "pattern or practice" in accordance with the usual meaning of the words, suggesting "a standard or routine way of operating." *McLean*, 595 F. Supp. 2d at 1365 (quoting *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002)). "Embedded in this description is a preliminary issue concerning the extent to which a servicer must address or investigate errors alleged in a borrower's QWR that may be attributable to a

---

[1] Defendant fails to seek summary judgment on all claims for actual damages or on liability under REPSA altogether. Accordingly, the Court refrains from ruling on these issues. However, the Court notes that, although Nationstar concedes actual damages consisting of postage and photocopying costs, it is not convinced that these costs flow proximately from Nationstar's actions. *See Burdick v. Bank of America, N.A.*, 2015 WL 1780982, at *6 (S.D. Fla. 2015) (finding that plaintiff's allegation of damages for the "cost of preparing and sending" QWRs was sufficient on motion to dismiss where "plaintiff need not specify his damages in detail") (quoting *Newton v. Palm Coast Recovery Corp.*, 2014 WL 293484, at *3 (S.D. Fla. Jan. 27, 2014)); *Justice v. Ocwen Loan Servicing*, 2015 WL 235738, at *19 (S.D. Ohio 2015) (holding that "the cost to prepare the QWR may qualify as actual damages" in the case of "a servicer's non-trivial violation"); *Marais v. Chase Home Finance, LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014) ("[W]hen [postage and mailing expenses] were incurred they were merely the transaction costs incident to correcting Marais' account or obtaining information about her loan. However, when Chase failed to do that which it was obligated to do [pursuant to RESPA], these costs metamorphosed into damages. Thus, it was Chase's failure that caused the metamorphosis."). In fact, because a RESPA claim cannot survive without plausible damages, it is suspect that any liability remains on Plaintiffs' RESPA claim. *See, e.g.*, *Whittaker v. Wells Fargo*, 2014 WL 5426497, at *10 ("In sum, even though Plaintiff has established that Wells Fargo was late in acknowledging his QWR, and even if he had established that Wells Fargo did not adequately acknowledge or respond to it, the RESPA claim falls short due to a failure of proof as to a causal connection between any RESPA violation and actual damages.").

6

prior account servicer." *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 276-77 (D. Mass. 2014); *see also Santander Bank, Nat'l Ass'n v. Sturgis*, 2013 WL 6046012, at *13 (D. Mass. Nov. 13, 2013) (finding only one case on topic, *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1094-95 (W.D. Wash. 2013)). "The obligations imposed by § 2605(e) apply only to the 'loan servicer.'" *McDonald*, 929 F. Supp. 2d at 1095.

Failing to respond at all to five QWRs would reflect a pattern of noncompliance with RESPA. *See, e.g.*, *Santander Bank,* 2013 WL 6046012, at *14; *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 869 (N.D. Ill. 2002) (failure to respond at all to five QWRs was sufficient to constitute a "pattern or practice"). Here, neither party disputes that Defendant responded to Plaintiffs' QWRs. The operative question is whether these responses were adequate under the statute, despite failing to include a full line-by-line payment history from each servicer over the life of Plaintiffs' loan.

The Eleventh Circuit has addressed the level of detail that RESPA requires a current servicer to provide in response to a QWR. *See Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. Sept. 30, 2014). In *Bates*, the court found that Chase's explanation in response to Plaintiff's QWR, "that it had returned the funds from Bates's September and November payments because they were not certified funds and were inadequate to cure the default" was wholly sufficient under § 2605(e)(2)(B). *Id.* "Although Bates was confused and/or unsatisfied with this answer, the information provided an explanation to Bates as to what happened to her September payment and provided her with contact information for further support. This *transparency and facilitation of communication* is the goal of RESPA, and the breakdown in communication between Bates and Chase as to the details of the September payment's return, albeit in part due to the fault of both parties, did not cause Bates damages." *Id.*

(emphasis added); *see also McWeay v. Citibank, N.A.*, 521 Fed. App'x 784 (11th Cir. 2013) (finding no RESPA violation where servicer failed to respond to QWR because mortgagor did not request information relating to servicing of the loan); *Chipka v. Bank of Am.*, 355 Fed. App'x 380, 382 (11th Cir. 2009) (finding no RESPA violation where servicer explained that account was correctly serviced and provided name and telephone number of an employee for any further-needed assistance); *Whittaker v. Wells Fargo Bank, N.A.*, 2014 WL 5426497, at *8 (M.D. Fla. Oct. 23, 2014) ("Although Plaintiff did not like the explanation he received from Wells Fargo, Wells Fargo did state why it believed that the action it had taken on Plaintiff's account with regard to application of the insurance proceeds was appropriate and correct. Such an explanation satisfies RESPA. The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons."); *Refroe v. Nationstar Mortg., LLC*, 2015 WL 541495, at *5 (S.D. Ala. Feb. 10, 2015) ("Nationstar is not required to give a response that is desired by or satisfies Plaintiff, but is merely required to 'provide a statement of its reasons,' which Nationstar did.") (citing *Whittaker*, 2014 WL 5426497, at *8). Although the statute provides three potential responses – (1) the information requested, (2) an explanation why the information is unavailable, or (3) the name of an SPOC – a loan servicer need only comply with *one* of these three options to satisfy its RESPA duties. *See Refroe, LLC*, 2015 WL 541495 at *5; *Marais*, 24 F. Supp. 3d at 721 ("Because these three methods of compliance are presented in the disjunctive, a servicer need not use all three response methods.").

    There remains "a dearth of case law even articulating the responsibility" of a current servicer to provide loan information from a prior servicer in a QWR response. *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d at 271 (D. Mass. 2014). The Court finds *Bulmer* instructive.

*Bulmer* found that "RESPA places the dominant burden on the current servicer, *i.e.,* the assignee, to provide all salient servicing information in response to a QWR; the statute does not assume that all prior servicing information may simply vanish into the ether." *Id.* But, information from a prior servicer can only be "salient" to the extent that it is (potentially) the source of a current problem with the borrower's account.

As compared to the facts here, the borrower in *Bulmer* was in arrears for the majority, if not all, of the duration of his mortgage loan. *Id.* In January 2010, he made a payment to the servicer at the time, Wells Fargo, which he thought would bring his account current. *Id.* Wells Fargo transferred the servicing of the borrower's mortgage to Midland in August 2010. *Id.* at 274. Midland then contacted the borrower about an improper application of his mortgage payments and, two months later, sent a notice of default. *Id.* In July 2011, MidFirst Bank, FSA took over the servicing of the borrower's mortgage from Midland. *Id.* at 275. In response to a QWR from the borrower, MidFirst Bank provided payment information starting only in August 2010, despite holding the borrower to the alleged January 2010 error. *Id.*

On summary judgment, the *Bulmer* court held that where a current servicer alleges an account issue arising from payments between the borrower and a prior servicer, clearly RESPA "would ring hollow" if it did not require the current servicer to provide documentary support behind this allegation. *Id.* at 277. This support would necessarily include any payment history to which current arrears are attributed. *See id.* All told, however, the *Bulmer* court never addressed what standard should apply to a current servicer under RESPA where no prior payments are in dispute.

Where prior payments are not disputed, RESPA requires a loan servicer to provide a statement of its reasons – no more and no less. *See, e.g.*, *Bates*, 768 F.3d at 1135. It would be

unduly burdensome to interpret RESPA to require current servicers to dig up every one-time payment ever made for the duration of a multi-year home mortgage loan whenever a borrower asks for them, particularly where no payments are at issue.

Here, Defendant states, and Plaintiffs do not dispute, that Plaintiffs' loan balance was current at the time that Nationstar took over the servicing of Plaintiffs' mortgage loan. *See* Def. SOF ¶ 11. "The pay histories provided to plaintiffs reflected plaintiffs' account as being current and paid-in-full through the GreenPoint transfer. None of Nationstar's responses to plaintiffs' inquiries claimed plaintiffs were delinquent, or amounts were due and owing from plaintiffs." *Id.* In fact, QWR 1 demonstrates that Plaintiffs believed their monthly payments were current at all times until their decision to stop payment to Nationstar. If that was not enough, Defendant confirmed that Plaintiffs' account was paid in full in Def. Resp. 1. Each subsequent QWR asked for pay history beyond what RESPA reasonably required Nationstar to provide.

Even if Defendant's responses contained some "boilerplate" language, Defendant provided timely responses to each of Plaintiffs' requests with, at a minimum, a statement of their reasons. *See* Pl. Motion at 8. "Indeed, we take judicial notice of the fact that a great deal of correspondence from consumer lenders is standardized, computer generated notices that are routinely issued with little or no individual review." *Cardiello v. The Money Store, Inc.*, 2001 WL 604007, at *9 (S.D.N.Y. June 1, 2001). Under the established facts here, there was no pattern or practice of noncompliance by Nationstar. Accordingly, Plaintiffs' Motion is denied.

B. **Defendant Demonstrates Limitation on Actual Damages is Warranted**

Defendant argues that "Plaintiffs provide no justification, and more importantly no evidence, in support of their claim for actual damages proximately caused by Nationstar's alleged RESPA violation – aside from postage and photocopying costs of approximately

10

$65.00." Def. Motion at 2. In order to establish actual damages under RESPA, a plaintiff must demonstrate that Defendant's breach proximately caused the alleged damages. "While courts have interpreted this requirement liberally, the loss alleged must be related to the RESPA violation itself." *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 788 (S.D. Miss. April 11, 2014) (quoting *Hensley v. Bank of New York Mellon*, 2011 WL 4084253, at *3-4 (E.D. Cal. Sept. 13, 2011)); *see also Yates v. GMAC Mortg. LLC*, 2010 WL 5316550, at *4 (N.D. Ga. Dec. 17, 2010) (dismissing RESPA claim with prejudice because plaintiff failed to "articulate any facts showing how Defendant's failure to respond or inadequate response to the RESPA requests resulted in any damages or the amount of such damages"); *Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013) ("A RESPA claim's failure to allege a pecuniary loss resulting from a failure to respond is fatal to the claim."); *Jones v. Vericrest Fin., Inc.*, 2011 WL 7025915, at *19 (N.D. Ga. Dec. 7, 2011) (finding that even if plaintiff had sufficiently alleged that defendant violated RESPA by failing to adequately respond to a written request, RESPA claim would still be dismissed since "the Plaintiff has not included any factual allegations explaining how [defendant's] failure to provide an adequate response to the qualified written response caused her to suffer any damages"); *Watts v. Federal Home Loan Mort. Corp.*, 2012 WL 6928124, at *5 (D. Minn. Oct. 30, 2012) (dismissing RESPA claim since "[e]ven if [plaintiff's] correspondence was a qualified written request, which it was not, [plaintiff] failed to allege actual damages."); *Phillips v. Bank of America Corp.*, 2011 WL 4844274, at *5 (N.D. Cal. Oct. 11, 2011) (dismissing plaintiff's RESPA claim because plaintiff failed to allege facts showing "that it is plausible, rather than merely possible," that the claimed damages resulted from defendant's alleged violation of RESPA).

"Conclusory and speculative allegations about the effects of failure to respond to a QWR's 'laundry list' of requests for information are insufficient" in the absence of showing "how the failure to respond to the QWR[ ] caused any of these things." *Givant v. Vitek Real Estate Industries Group, Inc.*, 2012 WL 5838934, at *4-5 (E.D. Cal. Nov. 15, 2012) (finding that Plaintiff "failed to explain how Everhome's failure to respond to the QWR proximately caused her damages"). Additionally, "costs and expenses of filing a lawsuit do not qualify as actual damages for the purposes of § 2605." *Id.* (referencing *Lal v. Am. Home Serv., Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010); *Frison v. WMC Mortg. Corp.*, 2011 WL 4571753, at *4 (S.D. Cal. Sept. 30, 2011)).

Plaintiffs allege damages including: "(1) costs incurred in sending correspondences to mitigate their damages; (2) overpayment for the months of March 2014, April 2014, May 2014, and June 2014; (3) emotional distress, pain and suffering, humiliation, and embarrassment; and (4) reasonable attorney's fees in Plaintiffs' having to hire Loan Lawyers, LLC, in this action." Compl. ¶ 116. Plaintiffs argue that these damages "stemmed from Nationstar's failure to satisfy Plaintiffs' request and provide a complete pay history" – but they fail to explain how or why. ECF No. [82] at 4-5.

Plaintiffs claim that they suffered emotional distress "as a result of . . . writing, mailing, receiving, and processing mail." ECF No. [82] at 5 (Plaintiff's Opposition to Defendant's Motion, "Pl. Opp." (quoting Pl. Interrog. 1)). The Court understands well the "aggravation" of "draft[ing] correspondences" and taking them to the Post Office where "[s]ometimes the lines are long." *Id.* But, putting aside the tenuous connection to Nationstar's actions for the moment – the argument that these ordinary stressors alone amount to real anguish compensable under RESPA is audacious. *See, e.g.*, *Diedrich v. Ocwen Loan Servicing, LLC*, 2015 WL 1885630, *8

12

(E.D. Wis. Apr. 24, 2015) ("Conclusory statements of stress are not sufficient."); *McLean*, 595 F. Supp. 2d at 1368 ("The plaintiffs' deposition testimony that the December 8, 2004 letter caused them to panic is insufficient and the plaintiffs have failed to present the Court with other evidence through affidavits or sworn testimony from witnesses supporting their emotional distress claim."); *cf. Blackburn v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1316, 1324 (M.D. Ga. 2012) (allowing damages for emotional distress as a result of *trespass* and *conversion* under RESPA).

Plaintiffs also appear to claim damages for lost time corresponding with Nationstar, pointing to a chart that includes time for "speaking with friends and family about what's going on." ECF No. [64-1] at 38:16-20 (Plaintiff Anthony Russell's Deposition Testimony); *see* Pl. Interrog. at 18; Pl. Opp., Exhibit A. However, as explained above, this reaction time is not time lost due to Nationstar's noncompliance with RESPA. "Moreover, many of the abbreviations used by the plaintiffs are not self-explanatory and the generalized research entries do not allow the Court to determine whether any of the research entries relate to the RESPA violations." *McLean*, 595 F. Supp. 2d at 1371; *see* Pl. Interrog. at 18; Pl. Opp., Exhibit A.

Any distress that Plaintiffs suffered from this thorny situation was self-inflicted. The necessary causal link to Defendant is unclear at best. Plaintiffs failed to make payments that they knew they owed. As Defendant argues, "they cannot establish proximate causation in any event as they are unable to distinguish between injury allegedly caused by Nationstar's alleged RESPA violation and the subsequent foreclosure resulting from their own conduct." ECF No. [85] at 4-5 (Defendant's Reply); *see Rourk v. Bank of American Nat. Ass'n*, 587 Fed. App'x 597, 600 (11th Cir. Sept. 30, 2014) ("Under these circumstances, Rourk had an obligation to continue making payments she knew she owed, and Rourk's nonpayment is fatal to her claim for breach

13

of contract and wrongful foreclosure, as her alleged injury was solely attributable to her own acts or omissions.") (citation omitted); *Moody Nat'l RI Atlanta H, LLC v. RLJ III Fin. Atlanta, LLC*, 2010 WL 163296, at *9 (N.D. Ga. Jan. 14, 2010) (rejecting plaintiffs' argument that defendant's demand of default interest caused and excused plaintiffs' nonperformance in not making a timely payment, stating that plaintiffs "took a calculated risk by not making a timely payment, knowing that doing so was a breach of the Note"). Nationstar could not have provided Plaintiffs with any information that would have mitigated the damages they claim to have suffered. Under the circumstances presented, Plaintiffs did not sustain damages by Defendant's responses or any lack thereof. Accordingly, Defendant's Motion is granted.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Partial Summary Judgment as to Statutory Damages, ECF No. [68], is **DENIED**;

2. Defendant's Motion for Partial Summary Judgment Limiting Actual Damages, ECF No. [66], is **GRANTED**.

**DONE AND ORDERED** in Miami, Florida, this 26th day of August, 2015.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

cc:    counsel of record