UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61977-CIV-BLOOM/VALLE

ANTHONY RUSSELL, *et al.*,

    Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC,

    Defendant.

_____/

## ORDER ON LIABILITY

**THIS CAUSE** is before the Court upon the parties' supplemental memoranda of law as to liability under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2601, *et seq.* ("RESPA"). *See* ECF Nos. [88] ("Def. Mem."), [91] ("Pl. Mem."). The Court has reviewed the Memoranda, all supporting and opposing submissions, and the record. For the following reasons, the Court finds that Defendant did not violate RESPA and, thus, is not liable to Plaintiffs for actual or statutory damages.

### I.     Procedure

On February 17, 2015, Plaintiffs filed an Amended Complaint, ECF No. [30] ("Compl."), seeking actual and statutory relief for Defendant's alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2601, *et seq.* ("RESPA"). Defendant filed a Motion for Partial Summary Judgment Limiting Actual Damages, ECF No. [66] ("Def. Motion"), on July 22, 2015. Plaintiffs filed a Motion for Partial Summary Judgment as to Statutory Damages, ECF No. [67] ("Pl. Motion"), on the same day. On August 26, 2015, the Court entered an Order granting Defendant's Motion and denying Plaintiff's Motion. *See* ECF No. [86] (the "Order on

Summary Judgment," or the "Order"); *Russell v. Nationstar Mortgage LLC*, 2015 WL 5029346 (S.D. Fla. Aug. 26, 2015). The parties appeared before the Court for calendar call on August 31, 2015, where they agreed that no disputed facts remained warranting trial. *See* ECF No. [87] (Hearing Minutes). However, the parties disagree as to the proper application of the law to the instant facts. Accordingly, the Court granted the parties leave to file supplemental briefing as to liability under RESPA before rendering final judgment.

**II.     Undisputed Facts**

On October 1, 2003, Plaintiffs executed a note and mortgage in favor of GreenPoint Mortgage Funding, Inc., for $236,000.00. *See* ECF No. [78] ¶ 1 (Defendant's Statement of Facts, "Def. SOF"), ECF No. [79] ¶ 1 (Plaintiffs' Statement of Facts, "Pl. SOF"). At all times material, Plaintiffs were current on their mortgage payments. On May 29, 2012, Nationstar sent Plaintiffs a letter informing them that Nationstar had become the servicer for their mortgage loan, effective May 15, 2012. *See* Pl. SOF ¶ 2. According to Plaintiffs, in early 2013, they "believed there may have been an error in the crediting of their payments by the prior servicers." *Id.* at 3. Presumably to address this belief, on April 8, 2013, Plaintiffs sent a Qualified Written Request ("QWR") to Nationstar:

> *I am writing because we believe our loan term and conditions should have been adjusted prior to the transfer from Bank of America in May-2012,* and a proper accounting of escrow payments and an amortization schedule provided. *We would like for you to provide a copy of our promissory note, the mortgage, a copy of the loan agreement, truth in lending statements, and a life of loan accounting for all loan payments and escrow disbursements for this property. . . . Both monthly payments are current...*

ECF No. [66-2] at 6 ("QWR 1") (emphasis added).

Defendant's Customer Relations Specialist responded by letter dated April 26, 2013, attaching copies of the original mortgage agreement and note, the initial escrow account

2

disclosure statement, dated October 1, 2003, a notice of transfer of servicing rights, its servicing notice reflecting the principal and escrow balance as of May 29, 2012, and a payment history transaction report for the period of May 15, 2012 through April 26, 2013. That payment history reflected when payments were received, how the payments were applied, any disbursements made from the loan, and running balances of the unpaid principal. Defendant's letter explained:

> The payment history reflects a complete payment history for the period of 05/15/2012, through the date of this letter. . . . Upon receipt of your correspondence, the above mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them, and we respectfully refute all allegations mentioned in your letter. As such, the above-mentioned account will continue to be serviced appropriate to its status. As of the date of this correspondence, the account is contractually next due for the 12/01/2012 monthly installment[.] *You have asked for information or documents regarding the origination of your mortgage loan, the transfer of ownership of your loan and the transfer of servicing rights to your loan. These requests are not related to the servicing of the loan and do not identify any specific error regarding the servicing of the loan. Accordingly, your request does not fall within the scope of information that must be provided. Documents that are non-public and are confidential and/or proprietary.* Accordingly, Nationstar declines to provide this information without a subpoena or other legally proper request. The payment history appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information reported by Nationstar on the credit report is incorrect, please provide the detailed information for review.

ECF. No. [30-2] at 1-4 ("Def. Resp. 1") (emphasis added). The response also provided contact information for a Single Point of Contact ("SPOC"). *Id.*

Although it is unclear when, Nationstar provided additional payment history for the period that Bank of America serviced the loan, amounting to approximately five years of total payment history. *See* ECF No. [64-1] at 49 (Testimony of Plaintiff Anthony Russell) ("Q. From what time period was that loan history? A. For a few of the submissions that they provided it

was 12 months, then they moved to probably about 24 months and then I think they escalated it and got some from Bank of America. At most, it was like five years.").

On May 3, 2013, prior to receiving Defendant's response, Plaintiffs sent another QWR to Nationstar:

> This is an update to our April 8, 2013 QWR. . . . Our principal balance is less than the $202,745.22 shown in your April-9th statement. Please correct your accounts and *provide a copy of our promissory note, the mortgage, a copy of the loan agreement, truth in lending statements, and a life of loan accounting for all payments including loan payments and escrow disbursements for our property*. . . . If we do not get the documents requested by June 6th (in about 30-days) we will no longer make payments to you and for the next 60-90 days we will be depositing our monthly payments into an escrow account at BB&T bank. . . . [T]his will be the last [] payment until we get a complete and satisfactory response from you.

ECF No. [66-2] at 7 ("QWR 2").[1]

After receiving Defendant's response, providing the documents requested (set forth above), Plaintiffs sent another letter, dated May 17, 2013:

> This is further to our previous [QWR] dated 4/8/13 and 5/3/13. You are in violation of the RESPA response time. We are in receipt of your initial response dated 4/26/13, mailed 4/28/13, and received Saturday, 5/4/13 by my wife. Thanks for providing some of the requested documents; however, we do not understand why we need a subpoena for the remaining documents. There is no limitation in RESPA or the Dodd-Frank Act on what we can request to validate ownership or accuracy or request for a change in term[s] and conditions. *As such, we will be proceeding as outlined in our previous letter until all documents are received or we are satisfied with the accuracy, a life of loan accounting for all payments including loan payments and escrow disbursements for our property, and the mortgage and loan ownership.*

ECF No. [30-3] at 1 ("QWR 3") (emphasis added).

---

[1] QWR 2 was sent before Defendant's response period for QWR 1 had elapsed. Thus, Plaintiffs technically sent five QWRs and Defendant sent four responses. *See* Pl. SOF ¶ 44. However, the parties do not dispute that Defendant responded to each of Plaintiffs' QWRs (or the timeliness of those responses) – they only dispute the adequacy of the substance of the responses.

Defendant responded on June 10, 2013, stating that the documents Plaintiffs requested were enclosed:

> In this correspondence, you appear to seek certain information under the Fair Debt Collections Practices Act (FDCPA). Enclosed is a copy of the following documents that you requested: Payment History – The payment history reflects a complete payment history for the period of May 17, 2012, through the date of this letter. This payment history reflects when payments were received, how they were applied to the loan, and any disbursements made from the loan. The payment history also provides a description for each transaction and running balances of the unpaid principal and escrow accounts. . . . Billing statement dated May 8, 2013 – The billing statement will reflect the current amount due on the loan and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees. Notice and Security Instrument – The note and security instrument will validate the above mentioned loan. . . . Servicing transfer notice dated October 29, 2012. . . . Upon receipt of your correspondence, the above mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them, and we respectfully refute all allegations mentioned in your letter. *All documents not provided in this response are either not within the scope of this request, or are confidential and proprietary, and cannot be provided.* . . . You still owe your mortgage pursuant to the terms of the related documents, and any failure on your part to adhere to the terms of the mortgage will result in our pursuing remedies, including, but not limited to, foreclosure of the property.

ECF No. [30-4] at 1 ("Def. Resp. 2"); *see* Def. SOF ¶ 11. The response provided contact information for another SPOC. ECF No. [30-4] at 2.

Plaintiffs sent another letter to Defendant, dated August 12, 2013: "This is further to our [QWRs] dated April 8th, 2013 and May 3rd, 2013, our general written request (GWR)[2] dated May 22, 2013, and to provide you with a balance in Nationstar's escrow account per letter dated June 11, 2013." ECF No. [66-2] at 9 ("QWR 4") (emphasis added). The QWR requested several options for loan modification "since Nationstar is unable to comply fully with the QWR, in

---

[2] The record evidence does not include a May 22, 2013, letter, although it is referenced in Plaintiffs' QWRs several times. To the extent that there was such a letter, as addressed in more detail below, the Court is unable to determine if it would qualify as a QWR – and it is wary of the term "general written request," as no such term of art is set forth by RESPA.

particular, a life of loan accounting for all payments and escrow disbursements for our property."

*Id.* Defendants responded on August 22, 2013, by providing another SPOC and stating:

> In this correspondence, you appear to seek certain information pursuant to the Fair Debt Collection Practices Act (FDCPA), and *have had duplicate concerns to this matter when requesting a [QWR].* Enclosed are copies of the following documents that you requested. . . . The Payment History reflects a complete payment history for the period of May 17, 2012, through the date of this letter. . . . You asked us to provide the name, mailing address, and telephone number of a Nationstar good faith negotiator. *It is unclear from your correspondence exactly what information you seek; or, what servicing issue you dispute; however, as mentioned above[,] your assigned SPOC can assist you with modification options.[]* If you think there is an error in the servicing of the account, please let us know so that we can investigate and resolve and potential servicing error.

ECF No. [30-6] at 1-3 ("Def. Resp. 3.") (emphasis added).

On September 14, 2013, Plaintiffs sent another QWR, which reads: "We have been trying to resolve our [QWR] since April and Nationstar has not acted in good faith. *We have requested and not received a full accounting of the life of loan payment history.* Nationstar's erroneous balance does not correspond to the fully amortized accounting balance." ECF No. [30-8] ("QWR 5") (emphasis added); *see* Pl. SOF ¶ 20. Defendant responded on September 19, 2013, enclosing the same documents described above, naming another SPOC, and providing as follows: "Upon receipt of your correspondence, the above mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them, and we respectfully refute all allegations mentioned in your letter." ECF No. [30-9] at 3 ("Def. Resp. 4"). In November 2013, Plaintiffs stopped making payments to Nationstar. Pl. SOF ¶ 13. On September 4, 2014, Nationstar initiated foreclosure proceedings based on Plaintiffs' nonpayment. *See* Def. SOF ¶ 14.

### III. Discussion

#### A. Servicers have three options when responding to borrower requests

Section 2605(e) places obligations upon loan servicers[3] to respond to borrower inquiries. Subsection (2) requires loan servicers to take the following actions with respect to customer inquiries:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; *or*
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

---

[3] Section 2605 defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3).

12 U.S.C. § 2605(e)(2) (emphasis added). "Because these three methods of compliance are presented in the disjunctive, a servicer need not use all three response methods – indeed, § 2605(e)(2)(A) and (B) are, in most factual scenarios, mutually exclusive. However, common sense suggests, and the statute implies (by using language like 'if applicable,' 'to the extent applicable,' and qualifiers like 'appropriate,') that, depending on the circumstances, one response method may be preferable above others." *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 721-22 (S.D. Ohio 2014); *Hittle v. Residential Funding Corp.*, 2014 WL 3845802, at *10 (S.D. Ohio Aug. 5, 2014) ("[A] servicer does not have unfettered discretion about which of these three options to choose.").[4]

The operative question is whether Nationstar's responses, as set forth above, were adequate or, alternatively, violated RESPA. Plaintiffs maintain that, because Nationstar's responses were insufficient, Defendant is liable to them for both actual and statutory damages. Plaintiffs' Memoranda focuses on the distinction between notices of error under § 2605(e)(2)(B), and requests for information under § 2605(e)(2)(C), arguing that the preferable subsection for Defendant to use was subsection (C). *See* Pl. Mem. at 7-8. Defendant responds that, regardless of which subsection was most applicable, its responses were sufficient.

The broad construction of Plaintiffs' QWRs obfuscated exactly what Plaintiffs were in fact requesting, and the record reflects that confusion. *See, e.g.*, Testimony of Anthony Russell at 46-47 ("Q. Now, when you sent this initial response, again, back in April, were you alleging an error or were you trying to seek information about your loan? A. *Both*. Q. Can you

---

[4] The statute allows an aggrieved plaintiff to recover two types of damages from a loan servicer for its violation of RESPA – (A) any actual damages to the borrower as a result of the failure; and (B) any additional [statutory] damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1).

8

Case 0:14-cv-61977-BB   Document 92   Entered on FLSD Docket 10/06/2015   Page 9 of 17

CASE NO. 14-61977-CIV-BLOOM/VALLE

elaborate? A. I did a calculation and the balance that I got was not what they had. I wanted to see if they have the information that could show otherwise.") (emphasis added).

To the extent that Plaintiffs intended to hold Defendant accountable for both subsections (B) and (C), that "interpretation of the statute is broader then the statute allows, and places affirmative duties on loan servicers which are not clearly intended." *Carter v. Countrywide Home Loans, Inc.*, 2009 WL 2742560, at *6 (E.D. Va. Aug. 25, 2009); *Boardley v. Household Finance Corp. III*, 39 F. Supp. 3d 689, 701 (D. Md. 2014) ("Significantly, the provision is disjunctive . . . . Therefore, a failure to 'make appropriate corrections,' as provided for in §2605(e)(2)(A), is not necessarily a violation of § 2605(e)(2), as the servicer may have complied with subsection (B) or (C) instead."); *Ploog v. Homeside Lending, Inc.*, 2001 WL 987889, at *4 (N.D. Ill. Aug. 28, 2001) ("RESPA imposes a duty on servicers of federally related mortgage loans to respond in writing to borrowers' [QWRs] in *one of three ways*.") (emphasis added); *Wienert v. GMAC Mortg. Corp.*, 2009 WL 3190420, at *8 (E.D. Mich. Sept. 29, 2009) ("[T]he statute allows servicers to choose a method of response, there is *no duty to comply with all three*.") (emphasis added); *Elkins v. Ocwen Federal Savings Bank*, 2006 WL 3147716, *2 (N.D. Ill. Oct. 27, 2006) ("Plaintiff's argument is based on the *untenable position* that § 2506(e)(2) provides a servicer with two options only, rather than three, because subsections (2)(A) and (2)(B) are not separated by the word 'or' as is subsection (2)(C).") (emphasis added).

### B. Subsection (C) is preferable under these facts

Ultimately, the Court agrees with Plaintiffs that subsection (C) is most appropriate where Plaintiffs repeatedly requested a "complete" loan history to address a concern that remains unclear to this day. Plaintiffs' arguments and testimony lend further credence to this interpretation of Plaintiffs' QWRs. *See* Testimony of Anthony Russell at 21 ("Q. Didn't you

ask for the same documentation in each QWR? A. Pretty much. But after a certain number of QWR's, I'm getting some of the information. I pretty much emphasi[ze] the life of the loan request. That was the outstanding issue for months, if not years at this point."), at 47 ("I did a calculation and the balance that I got was not what they had. I wanted to see if they have the information that could show otherwise."); QWR 1 ("[W]e believe our loan term and conditions should have been adjusted prior to the transfer from Bank of America in May-2012. . . . Both monthly payments are current."); *see also Marquette v. Bank of America, N.A.*, 2015 WL 461852, at *12 (S.D. Cal. Feb. 4, 2015) (finding that subsection (B) did not apply where QWR did not state that "the account is in error"). Each subsequent QWR expressly referred back to Plaintiffs' initial request. *See* QWR 2 ("This is an update to our April 8, 2013 QWR. . . . Our principal balance is less than the $202,745.22 shown in your April-9th statement. Please correct your accounts . . . ."); QWR 3 ("This is further to our previous [QWR] dated 4/8/13 and 5/3/13."); QWR 4 ("This is further to our [QWR] dated April 8th, 2013 and May 3rd, 2013, our [QWR] dated May 22, 2013."); QWR 5 ("We have been trying to resolve our [QWR] since April."). Accordingly, under § 2605(e)(2)(C), Defendant was required to (i) investigate and provide "information requested by the borrower *or* an explanation of why the information requested is unavailable or cannot be obtained by the servicer," as well as (ii) provide contact information for a SPOC. 12 U.S.C. § 2605(e)(2)(C) (emphasis added).

### C. Nationstar's responses were sufficient under subsection (C)

Here, Defendant provided information responsive to Plaintiffs' inquiry, including: copies of the original mortgage agreement and note, the initial escrow account disclosure statement, dated October 1, 2003, a notice of transfer of servicing rights, its servicing notice reflecting the principal and escrow balance as of May 29, 2012, a payment history transaction report for the

period of May 15, 2012 through April 26, 2013, and an additional payment history from the period during which Bank of America serviced the loan, amounting to approximately five years of total payment history. *See* Def Resp. 1; Testimony of Anthony Russell at 49. Defendant also provided contact information for a SPOC for any further questions. *See* Def. Resps. 1-4.

Nationstar did not provide the payment history from 2003-2008, which Plaintiffs were seeking; however, the statute did not require them to do so. Plaintiffs expressly concede this point in their Supplemental Memorandum. Pl. Mem. at 12 ("[T]he only other way Nationstar could have satisfied its obligations under RESPA was to provide an explanation of why the information requested was unavailable or could not be obtained."). Section 2605(e)(2)(C)(i) permitted Nationstar, in lieu of providing the information, to provide "an explanation of why the information requested is unavailable or cannot be obtained." 12 U.S.C. § 2605(e)(2)(C)(i). Here, to address the absence of the 2003-2008 payment history, Nationstar explained that these documents "are non-public and are confidential and/or proprietary." Def. Resp. 1; *see also* Def. Resp. 2. This explanation is buttressed by the record, which demonstrates that Defendant conducted an investigation in an attempt to provide a complete loan history, but could not obtain the 2003-2008 histories. *See* Testimony of Sean Chibnik at 21:1-2 ("Q. Do you have the rest of the history from 2003? A. No."), 43:4-10 ("Q. . . . Nationstar doesn't have to this date the payment history reflecting all of these entries for the life of the loan from 2003? A. From 2003 until 2008. Q. Correct? A. Correct.").

Neither side claims that this information was in fact available to Nationstar – Plaintiffs stipulate to the belief that "Nationstar, for reasons unknown, does not even possess a complete pay history." Pl. Mem. at 3. Both sides appear to attribute the absent pay histories to the complex history of transfers between five different loan servicers over the life of the loan. *See*

Testimony of Sean Chibnik at 21:15-22:1 (setting forth loan transfers from the original loan servicer, Greenpoint, to Countrywide in 2008, to BAC Home Loan Servicing, LP, to Bank of America, and finally to Nationstar); 21:5-14 ("Q. Okay. Is that normal in your experience to have a loan with an incomplete pay history? A. This loan had multiple prior servicers. Prior to Bank of America it was Greenpoint. It appears that from the time of the servicing from Bank of America it was a – it contains all of the transactions for that period of time. But it does not contain the specific line item transactions from the point of – from the Greenpoint servicing timeframe.")

Plaintiffs continued to send the same request for a complete loan history, despite Nationstar's explanation and provision of all available information. Plaintiffs actually broadened their request in QWR 4, requesting several options for loan modification "further to [their] QWRs] dated April 8th, 2013 and May 3rd, 2013, [and their] *general written request (GWR)* dated May 22, 2013."[5] (emphasis added). RESPA makes no mention of a "general written request" or borrower request other than a QWR. Rather, it affirmatively sets forth a threshold for a written correspondence to qualify as a QWR – thus, precluding any more general request from triggering an obligation on the behalf of a loan servicer. *See Russell v. Nationstar Mortg., LLC*, 2015 WL 3744390, at *4 (S.D. Fla. June 15, 2015) (quoting 12 U.S.C. § 2605(e)(1)(B)[6]); ECF No. [57] at 6 (Order granting in part and denying in part Motion to Dismiss); *Chevy Chase Bank, F.S.B. v. Carrington*, 2010 WL 745771, at *2 (M.D. Fla. March 1, 2010) ("The investigation and

---

[5] The record does not contain a letter dated May 22, 2013, so it is unclear to which letter Plaintiffs refer as a "GWR." Thus, to the extent that the "GWR" would qualify as a "QWR," the Court is unable to make that determination.

[6] "For purposes of this subsection, a [QWR] shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that – (i) includes, or otherwise enables, the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "Under subsection (ii), a QWR must (1) give a statement for the reasons that the account is in error or (2) seek other information regarding the servicing of the loan." *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, 1306 (M.D. Fla. 2012).

correction obligations set forth in 12 U.S.C. § 2605(e)(2) only arise when a loan servicer receives a 'qualified written request' . . . .").

Furthermore, Plaintiffs' creation of this new term of art in their QWR highlights their failure to meaningfully participate in this resolution process alongside Defendant. In response to QWR 4, Defendant expressed its confusion as to what relief Plaintiffs were seeking and invited further dialogue: "It is unclear from your correspondence exactly what information you seek; or, what servicing issue you dispute; however, as mentioned above[,] your assigned SPOC can assist you with modification options.[] If you think there is an error in the servicing of the account, please let us know so that we can investigate and resolve any potential servicing error." Def. Resp. 3. Plaintiffs' QWR 5 was similarly evasive. ("We have requested and not received a full accounting of the life of loan payment history. Nationstar's erroneous balance does not correspond to the fully amortized accounting balance."); *see Hittle*, 2014 WL 3845802, at *9 ("The Hittles did not explain what was wrong with the account or why. . . . But, while no magic words are required, common sense dictates that *there needs to be at least enough detail to enable the servicer to make an investigation of the alleged errors and formulate an intelligible response*.") (emphasis added).

"[T]ransparency and facilitation of communication is the goal of RESPA," *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. Sept. 30, 2014), and this goal cannot be reached without good faith communication from both parties. This Court follows the rationale explained in *Hittle*:

> This Court has taken a dim view of generic form responses by servicers to QWRs in light of the statute-imposed obligations to investigate, explain, and clarify (or, if appropriate, correct the account) in response to concerns raised by a borrower. Now this Court elucidates the previously-unwritten corollary: A borrower cannot hold a servicer liable for failing to completely respond to every possible interpretation of a generic and vague

> QWR when the servicer has responded with a good faith investigation and explanation. *RESPA exists to prevent abuse of borrowers by servicers – not to enable abuse of servicers by borrowers.*

2014 WL 3845802, at *12 (emphasis added).

A servicer's obligation is to "fairly meet the substance of the QWR without being compelled to guess what the [borrowers] believed were the errors in the account or to dream-up and refute hypothetical reasons for the [borrowers'] vague discontent." *Id.* at *9 (finding no RESPA violation by loan servicer where plaintiffs had "blanket" concern as to their account "prior to the transfer" of mortgage to current loan servicer and plaintiffs "provided no non-circular reasons for the dispute"); *see O'Brien v. Seterus, Inc.*, 2015 WL 4514512, at *3 (S.D. Fla. July 24, 2015) ("Although Defendant did not give Plaintiffs the answer they desired, or respond with the level of specificity Plaintiffs apparently requested, Defendant did answer. . . ."); *Whittaker v. Wells Fargo Bank*, 2014 WL 5426497, at *8 (M.D. Fla. Oct. 23, 2014) ("Although Plaintiff did not like the explanation he received from Wells Fargo, Wells Fargo did state why it believed that the action it had taken on Plaintiff's account with regard to application of insurance proceeds was appropriate and correct. Such an explanation satisfies RESPA."); *Refroe v. Nationstar Mortgage, LLC*, 2015 WL 541495, at *5 (S.D. Ala. Feb. 10, 2015) ("Under RESPA, Nationstar is not required to give a response that is desired by or satisfies [plaintiffs]."). "[T]o require a loan servicer to always conduct an essentially 'blind' investigation of each account that it receives qualified written requests for, even when those requests only seek specific information, would be unduly burdensome, if not unnecessary and/or counter-productive. Such is especially so where the borrower is represented by counsel who is presumably knowledgeable in knowing what to request." *Carter*, 2009 WL 2742560, at *6.

14

Nevertheless, it has not gone unnoticed that a portion of each of Nationstar's responses contained standardized, impersonal, and impertinent language, which can only be viewed as a cut-and-paste of a generic and form-ready response. The Court stresses that these portions, *standing alone,* would not amount to an adequate explanation for an inability to provide requested information. *See, e.g.*, Def. Resp. 1 ("Upon receipt of your correspondence, the above mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them, and we respectfully refute all allegations mentioned in your letter."); Def. Resp. 2 (same). Boilerplate responses that fail to address a borrower's unique circumstances are plainly insufficient under RESPA. *See Marais*, 24 F. Supp. 3d at 724 (finding liability where, in response to a detailed, specific request, "Chase merely spat-out a form response enclosing copies of Marais' account documents"). RESPA was enacted to ensure that loan servicers, often with more resources and industry knowledge, provide individualized attention to the concerns of borrowers – ultimately, whose home ownership could be at jeopardy. *See, e.g., Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001) ("[T]he express terms of RESPA clearly indicate that it is, in fact, a consumer protection statute."); *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F.Supp.2d 1156, 1166 (M.D. Ala. June 23, 1999) ("[T]he court notes that RESPA has been construed by other courts as a consumer protection statute.") (citing *Dujanovic v. Mortgage America, Inc.*, 185 F.R.D. 660, 669 (N.D. Ala. 1999) (stating that Congress enacted RESPA "to protect borrowers from brokers," and "Congress clearly stated that RESPA was designed to protect consumers"); *Bieber v. Sovereign Bank*, 1996 WL 278813, at *5 (E.D. Pa. May 23, 1996) (noting that RESPA "is directed at protecting the buyer and remedying material nondisclosures in settlement statements")). However, given the

substance of Plaintiffs' QWRs and Defendant's responses here, the Act's purpose was achieved, and the Court finds no RESPA violation.

Plaintiffs sent elusive requests for information to Defendant, who attempted to provide as much information as it could in good faith, along with an explanation of why it could not obtain the remaining documents. *See* 12 U.S.C. § 2605(e)(2)(C); *Ian Stewart, et al., Plaintiff, v. Federal National Mortgage*, 2015 WL 5734859, at *4 (E.D. Mich. Sept. 30, 2015) ("Nationstar's response to [plaintiffs'] vague request was adequate, providing a full accounting that included a copy of the payment history transaction report which detailed 'amounts, dates and descriptions of any fees accessed, [and] any payments received, and any disbursements made.' Considering the vague statement given by Plaintiffs . . . , the reply was appropriate."); *cf. Amini v. Bank of America Corp.*, 2013 WL 1898211, at *2 (W.D. Wash. May 6, 2013) ("Under RESPA, the servicer has two choices when responding to a borrower's request for information regarding the servicing of his loan. . . . Bank of America did not choose *either* of these options. Instead, the servicer declined to produce information that was readily available . . . .") (emphasis added).

It is undisputed that Defendant did not have access to the remaining documents that Plaintiffs were seeking, as Nationstar explained to Plaintiffs in its responses. Defendant expressly gave Plaintiffs an opportunity to provide further clarification, which they did not take, that would have enabled Defendant to resolve any remaining inquiry more to Plaintiffs' satisfaction. Nevertheless (and despite Plaintiffs statements to the contrary, *see* QWR 3 ("until all documents are received or we are satisfied with the accuracy")), good faith – not borrower satisfaction – is the relevant standard for loan servicers to meet the substance of RESPA. Congress could not have intended for § 2605(e)(2) to operate in hindsight as a "gotcha" – essentially enabling borrowers to tie the hands of loan servicers "by inundating a lender with

qualified written requests until they receive a single unsatisfying response." *Banayan v. OneWest Bank F.S.B.*, 2012 WL 896206, at *6-7 (S.D. Cal. March 14, 2012). Because Defendant's responses were adequate and complied with § 2605(e)(2)(C), Defendant is not liable for damages.[7]

### D. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Court finds that, as a matter of law, Defendant complied with Section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA").

2. Judgment is entered **in favor of Defendant** and against Plaintiff.

3. Final Judgement shall be entered separately and the Court reserves jurisdiction for an award of attorneys' fees and costs as applicable.

4. The Clerk is directed to **CLOSE** this case.

5. To the extent not otherwise disposed of, all pending motions are hereby **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 5th day of October, 2015.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

cc: counsel of record

---

[7] Even if Plaintiffs were able to demonstrate that Defendant's responses were insufficient, which they are not, they would need to meet additional hurdles, pursuant to § 2605(f), to entitle them to actual or statutory damages. *See Russell*, 2015 WL 5029346, at *4, 6; *McLean*, 595 F. Supp. 2d at 1365 (denying statutory damages under RESPA where "plaintiffs have presented no evidence of a standard or institutionalized practice of noncompliance"); *Phillips v. Bank of America Corp.*, 2011 WL 4844274, at *5 (N.D. Cal. Oct. 11, 2011) (dismissing RESPA claim because plaintiff failed to present facts showing "that it is plausible, rather than merely possible," that actual damages were caused by defendant's RESPA violation); *see also Cardiello v. The Money Store, Inc.*, 2001 WL 604007, at *8 (S.D.N.Y. June 1, 2001) ("Moreover, even assuming plaintiffs could allege that defendants had failed to comply with RESPA § 2605 in some technical respect, plaintiffs appear to have suffered no damages.").